**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**KENNETH MYERS,**

        **Plaintiff,**

**vs.**                                                                 **Civ. No. 07-833 JH/ACT**

**ROGERS TRUCKING CO., INC.,
and ROBERT GWINN,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

In this Memorandum Opinion and Order, the Court addresses *Defendant's Motion for Partial Summary Judgment to Exclude Damages for Plaintiff's Cognitive Injuries* [Doc. No. 71]. The question raised in the motion is whether or not Plaintiff Kenneth Myers has sufficient evidence to demonstrate, to a reasonable degree of medical probability, whether or not the accident caused his memory problems, tendency to become disoriented, depression, and dizziness. After considering the law, the briefs, and the evidence in the record, the Court concludes that the motion should be granted.

## DISCUSSION

Defendants move for summary judgment on Myers' claim for damages for "cognitive injuries"—loss of memory, decrease in ability to think, tendency to become disoriented, depression, and dizziness—as a result of the accident in this case. As grounds for the motion, Defendants argue that Myers has failed to come forward with expert testimony establishing that, to a reasonable degree of medical probability, the injuries Myers received in the accident caused his cognitive injuries.

It is undisputed that Myers suffered a small hematoma in his brain as a result of the accident.

Defendants have retained neurologist Don Seelinger as an expert witness. In his deposition, Dr. Seelinger (who has not examined Myers) testified that while the physical injuries Myers received in the accident could have caused his cognitive injuries, other factors could play a role as well. Given the lack of certain tests on Myers, Dr. Seelinger was unable to reach a definitive conclusion on causation. He testified as follows:

> A. [Myers] went to the emergency room, was taken there by ambulance, and he had complaints of nausea, dizziness, memory problems or mental status change, headache and neck pain.
>
> . . . .
>
> Q. [W]ould memory loss be something that a subdural hematoma could be evidence of?
>
> A. Again, this would depend on the size of the subdural. And the subdural itself implies that something happened. This is not a structural change within the brain, but he was ill and he was nauseated and had these other symptoms. And sure, it doesn't surprise me that he would complain of memory problems or other complaints in that situation.

Seelinger Depo. at pp. 10-11.

> A. But if someone has significant intellectual impairment–he's never had a mini-mental status exam, at the bare-bones minimum. He's never had neuropsychological testing. And as I think I stated in my report, while it's possible that this impact that he had with the car wreck caused some thinking difficulties, no one has done anything to, one, measure the extent of it; two, identify factors which might otherwise account for it. With age, and he's 76 or 77 now, in February, 77, there is a decline in mental capabilities with the adding decades, and that could be a factor. People can have low thyroid and have many of his symptoms. People can have B-12 or folate deficiency and have many of his symptoms. And he was described as having white matter changes on his brain scan and no one ever investigated those more adequately with an MRI scan, which is a much more sensitive test to identify the extent of those. And Mr. Myers is hypertensive and hypertension is associated with white matter changes. And all of those are things that might be associated with cognitive decline.

Seelinger Depo. at pp. 13-14.

> Q. And then on question 14 he reported he couldn't remember details like he

>     used to. Would that be consistent with the injury he suffered?
>
> A.  As we've already described, that can be due to a multitude of things, among them, yes, the head injury.

Seelinger Depo. at p. 24.

> Q.  And again your conclusions are—if you could summarize them for us.
>
> A.  Well, I said that the multiple—it is possible the multiple complaints he has are the result of his injury and the subdural; however—and then there were all the things that we've described before. A number of things haven't been adequately assessed. To allow giving full support to that as a sole cause of his problems, I think that's very unlikely.

Seelinger Depo. at p. 33.

> Q.  And we'll use the memory problems as an example. Are you able to say, then that the motor vehicle accident with my client in December of '05 caused his memory problems that he complains of today?
>
> A.  I certainly could not say that. That's a possible factor. Certainly, he was—no one is denying that injury. It's a possible factor. His age, his white matter disease, his hypertension, probable or possible depression, all could present the things that would show up as very similar sort of complaints.

Seelinger Depo. at p. 39.

> Q.  Are you able to tell us, then, to a reasonable degree of medical probability that the motor vehicle accident in December of '05 caused the memory problems, the problems thinking, the dizziness, depression, anxiety that Plaintiff complains of now?
>
> A.  I'd hate to build a building on sand without a foundation. And simply, he's not been evaluated.
>
> Q.  You can't tell us either way?
>
> A.  It can be a factor. I cannot tell that [sic] you to a reasonable degree of medical probability, which is what you asked.

Seelinger Depo. at pp. 41-42.

Myers has not retained an expert in the case, instead relying on his treating physician, Dr.

3

Kevin Goodluck, who specializes in internal medicine.  Apparently Dr. Goodluck has not treated Myers for his cognitive injuries.  Both parties have submitted excerpts from Dr. Goodluck's deposition.  Dr. Goodluck testified as follows:

> Q. Was there anything that you disagreed with in Dr. Seelinger's report or his supplemental report?
>
> A. In reviewing what was pointed out to me with respect to his comments, with respect to looking at the timeline of when the accident had occurred and what his report had stated, it looked very reasonable with respect to what his outcome was.
>
> Q. Dr. Seelinger's?
>
> A. Dr. Seelinger's final comment.
>
> Q. Okay.  And what comment would that be?
>
> A. "In summary, it is entirely possible that his multiple complaints are the result of traumatic head injury and subdural hematoma he suffered."

Goodluck Depo. at p. 9.  Dr. Goodluck said "I cannot dispute" Dr. Seelinger's statement that brain white matter changes due to hypertension, anxiety/depression, and unrelated dementia as well as memory decline as a result of aging are also potential causes of Myers' continuing symptoms, and that it was "reasonable to accept" all those as possible causes.  *Id*. at p. 10.  However, Dr. Goodluck also testified that when he considered the timeline of what occurred, it made more sense to him that Myers' symptoms stemmed from the accident.  *Id*.  However, when counsel for the Defendants pressed Dr. Goodluck on the issue, he was unable to testify as to causation:

> Q. Mr. Myers is complaining now that he suffers from forgetfulness, loss of memory, dizziness, other things he attributes to the subdural hematoma.  Can you say that to a reasonable degree of medical probability or certainty, the accident with my client caused those complaints that he makes to this day?
>
> A. I would be guessing.  I think looking—all I can do is rely on the specialists to look at that and document that, and make an assessment—an opinion of that, since I didn't—I didn't see that when I did see him.  Because looking

>at the notes, you know, I had seen him for a lot of other things, other than just the accident.

In short, neither of the medical experts in this case can testify that, to a reasonable degree of medical probability, the accident caused Myers' memory problems, tendency to become disoriented, depression, and dizziness. Myers bears the burden on the issue of causation. *See Baer v. Regents of University of California*, 1999-NMCA-005, ¶ 23, 126 N.M. 508 ("Because Plaintiff in this case never established to a reasonable degree of medical probability that Baer's cancer would have been detected by an x-ray in 1989, Plaintiff could not show that the failure to x-ray more likely than not caused a reduction in Baer's chance of survival."). Viewing the evidence in the light most favorable to Myers, it appears that as a matter of law, Myers cannot prove that the accident caused his cognitive injuries. Therefore, Defendants are entitled to summary judgment on Myers' claim for cognitive injuries.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Partial Summary Judgment to Exclude Damages for Plaintiff's Cognitive Injuries* [Doc. No. 71] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**