IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENNETH MYERS,

                **Plaintiff,**

vs.                                                        Civ. No. 07-833 JH/ACT

ROGERS TRUCKING CO., INC.,
and ROBERT GWINN,

                **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on *Defendants' Motion for Summary Judgment Regarding Plaintiff's First Amended Complaint* [Doc. No. 69], in which the Defendants move for partial summary judgment on Plaintiff's claims for punitive damages and spoliation, and *Defendants' Motion for Partial Summary Judgment Regarding Punitive Damages* [Doc. No. 61]. The Court also addresses two pending motions in limine: Defendants' *Motion in Limine to Exclude Testimony and Evidence Concerning Post-Accident Testing* [Doc. No. 58] and *Defendants' Motion in Limine to Exclude Evidence and Testimony Regarding Defendant Gwinn's Prior Traffic Citations and Accidents* [Doc. No. 60]. After reviewing the evidence, the law, and the arguments of counsel, the Court concludes that all of the motions should be granted.

## LEGAL STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## **FACTS**

Viewed in the light most favorable to the Plaintiff, Kenneth Myers ("Myers"), the facts are as follows. Defendant Robert Gwinn ("Gwinn") is a semi-truck driver employed by Defendant Rogers Trucking Company ("Rogers"). On December 15, 2005, Gwinn was driving his truck on westbound I-40 in Albuquerque, New Mexico when he collided with the vehicle driven by Myers. At the time of the accident, Myers was in the far left lane of the freeway, slowing down with his blinkers on so that he could pull over onto the left shoulder to assist his son and his family, whose car was broken down on the shoulder. Gwinn was driving his tractor-trailer in the lane adjacent to Myers. A Department of Transportation "HELP" truck was already on the left shoulder assisting Myers' son, and the truck's lights were flashing, indicating that traffic should move over to the right. Viewed in the light most favorable to Myers, the evidence in the record demonstrates that despite the presence of the HELP truck with its flashing lights, Gwinn was traveling 70 to 75 miles per hour (in excess of the posted limit of 65 miles per hour) and changed into the far left lane toward both Myers and the HELP truck.[1] The front of Gwinn's cab hit the rear of Myers' vehicle three times, first spinning Myers' vehicle around, sending it into the air, and ultimately forcing it into the barrier on the median. Myers sustained serious injuries, including closed head injuries.

According to the evidence before the Court, Gwinn was transporting his load between Georgia and California, and he spent the night before the accident in Amarillo, Texas. The following day, Gwinn drove approximately four and a half hours to Albuquerque, where the accident

---

[1] NMSA 1978, § 66-7-332(B) provides: "Upon approaching a stationary authorized emergency vehicle displaying flashing emergency lights, unless otherwise directed, the driver of a vehicle shall: (1) if reasonably safe to do so, *drive in a lane not adjacent to where the authorized emergency vehicle is stopped*, decrease the speed of the vehicle to a speed that is reasonable and prudent under the circumstances and proceed with caution . . ."

occurred. Gwinn testified that he showed his driver's logbook to Albuquerque Police Officer Nicholas Kramer, who responded to the accident. Officer Kramer testified that although he had no independent recollection of looking at Gwinn's logbook, it was his routine practice to look at such logbooks and take note in his report of any irregularities. He noted no problems with Gwinn's logbook in his report and, though it was his practice to look for signs of driver impairment, on this occasion he noted no impairment.

As was his routine, shortly after the accident Gwinn sent his logbook to Rogers. Marie Slagle, the Safety Director for Rogers, received the logbook. She performed a manual audit of the information in the book and found no driver violations by Gwinn. Then, she entered the information from the logbook into her computer, which used a software program to determine whether Gwinn had violated applicable rules for drivers regarding minimum hours of rest and maximum hours or miles driven in one day. The computer also generated a compliance review, or "report card," showing no safety violations by Gwinn in connection with the accident. Then, Slagle placed the logbook with all the other logbooks from that period of time. It is undisputed that regulations promulgated by the Department of Transportation require drivers and their employers to retain logbooks for six months. One year after the accident and prior to the filing of this lawsuit, Rogers destroyed the logbook and purged the logbook data that had been entered into its computer, as was its practice. Thus, the only remaining record is the computer generated compliance review, which shows no violations.

Rogers pays its drivers a percentage of the profit made on each load delivered. Gwinn's truck was governed such that it could not go faster than 78 miles per hour. Gwinn testified that when he sets his cruise control, he usually sets it within two to three miles per hour of whatever the applicable speed limit is; there is no evidence as to whether his cruise control was on at the time of

the accident. Gwinn testified that he has had approximately eight or nine speeding tickets since he started driving at age sixteen; there is no evidence as to what period of time that covers, or whether he received those tickets driving a semi-truck or his own personal vehicle.

On June 15, 2007, Myers filed his original complaint in the New Mexico's Second Judicial District Court. On August 24, 2007, Defendants removed the case to this Court, and on August 6, 2008, Myers filed his Amended Complaint. He asserts a claim against the Defendants for negligence. In his Amended Complaint Myers also claims that he is entitled to punitive damages because Gwinn was driving without the proper rest required by law, because Rogers encouraged and ratified its drivers' actions in driving without proper rest (an argument that relies solely on the fact that Rogers paid its drivers by the load), and because Rogers' actions in destroying Gwinn's logbook amount to spoliation of evidence. In his responses to Defendants' motions for summary judgment, Myers also claims that he is entitled to punitive damages because Gwinn was speeding at the time of the accident, because Gwinn has had approximately eight or nine speeding tickets since he was sixteen years old, because Gwinn changed lanes toward an emergency vehicle in violation of New Mexico law, and because Rogers sent a memo to its drivers stating, "It is strongly suggested that your log book shows 5 mph below the posted speed limit in each state."[2]

---

[2] Myers also states that he is entitled to punitive damages because Rogers does not test its drivers for drugs. However, Myers cites no evidence to support that assertion, nor does he cite any evidence to support an inference that Rogers was required to test Gwinn for drugs or that Gwinn was impaired by drugs at the time of the accident.

**DISCUSSION**

**I.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S FIRST AMENDED COMPLAINT [Doc. No. 69]**

    **A.    Admissibility of Rogers' Summary Judgment Evidence**

Myers contends, with little or no explanation, that Rogers has submitted inadmissible hearsay evidence in support of its motion for summary judgment. For the most part, the Court disagrees. Having reviewed the evidence in detail, the Court concludes that the cited deposition testimony is not hearsay. Similarly, the computer-generated compliance review, or "report card," (Defendants' Ex. Y) based on Gwinn's logbook is not hearsay because it was authenticated, explained, and made an exhibit to Slagle's deposition. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992) ("[S]ufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."). However, the Court agrees that Defendants' Exhibit AB-1, which appears to be letter from an independent insurance adjuster, is hearsay to the extent it is offered for the truth of anything written therein. Thus, the Court has not considered Exhibit AB-1 in its analysis of the motion.

    **B.    Spoliation of Evidence**

The analysis begins with Myers' claim for punitive damages based on spoliation of evidence. As the New Mexico Court of Appeals has observed, under New Mexico law spoliation of evidence may be addressed in three ways: (1) prosecution under criminal law, (2) civil redress through the tort of intentional spoliation of evidence, and (3) the use of the court's inherent power to impose sanctions on both litigants and attorneys in order to regulate their dockets, promote judicial efficiency, and deter frivolous claims. *Restaurant Management Co. v. Kidde-Fenwal, Inc.*, 1999-NMCA-101, ¶ 10-11, 127 N.M. 708. The penalty that Myers seeks—the imposition of punitive

damages—is clearly not criminal in nature, nor is it one normally imposed by courts in the exercise of their inherent power. Thus, the Court concludes that Myers is, in essence, asserting a separate tort claim for intentional spoliation.

In *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 649, 905 P.2d 185, 189 (1995), *overruled on other grounds*, *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, the New Mexico Supreme Court established the following elements for the tort of intentional spoliation of evidence: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on the part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages. The Defendants argue, and the Court agrees, that Myers has failed to come forward with sufficient evidence to create a genuine issue of material fact on the fourth and fifth elements of this claim. With regard to the fourth element, intent, it is undisputed that Rogers kept the logbook for one year, while federal regulations required only that it keep the logbook for six months. Furthermore, Rogers has come forward with evidence that it destroyed the logbook evidence as part of its routine destruction of data after one year has passed. In contrast, Myers has come forward with no evidence from which a jury could infer malicious intent.

With regard to the fifth element of the tort—Myers' inability to prove his lawsuit in the absence of the logbook—again there is an absence of a fact issue. Myers' underlying claim that Gwinn's negligent driving was a proximate cause of his injuries is not dependent upon the logbook evidence. Instead, that is a claim that will depend greatly on the testimony of eyewitnesses and accident reconstruction experts. It is not enough for Myers merely to argue in speculative, conclusory fashion that the logbook would have shown either sleep deprivation or other safety

violation by Gwinn; he must come forward with evidence, which he has failed to do. Also, there is a great deal of other evidence regarding the content of the logbook: Gwinn's testimony regarding the amount of rest he got and the number of hours he drove that day; Officer Kramer's testimony that he normally reviews trucker's logbooks and notes any irregularities he observes, and that while he has no independent recollection of these events, he made no such notation on his police report; Slagle's testimony that neither her manual audit nor the computer's audit of the logbook data showed any violations; and the "report card" generated by the computer showing no safety violations by Gwinn related to the accident. Thus, the Court concludes that to the extent Myers is asserting a tort claim for intentional spoliation of evidence, Defendants are entitled to summary judgment on that claim.

However, Myers also contends that the Court should instruct the jury that he is entitled to an inference that the missing logbook would have contained evidence favorable to his underlying negligence claim.[3] The New Mexico Supreme Court has explained the instruction thus:

> Where the actions of the spoliator fail to rise to the level of malicious conduct or otherwise meet the elements of the tort of intentional spoliation of evidence, we believe a more appropriate remedy would be a permissible adverse evidentiary inference by the jury in the underlying claim. This evidentiary inference could be accomplished through an instruction to the jury that it is permissible to infer that evidence intentionally destroyed, concealed, mutilated, or altered by a party without reasonable explanation would have been unfavorable to that party. Trial courts, in determining whether to give this instruction, should consider whether the spoliation was intentional, whether the spoliator knew of the reasonable possibility of a lawsuit involving the spoliated object, whether the party requesting the instruction "acted with due diligence with respect to the spoliated evidence," and whether the evidence

---

[3] The New Mexico Uniform Jury Instruction on this issue, UJI 13-1651, NMRA2008, provides: "_____ (plaintiff or defendant) says that evidence within the control of _____ (other party) was lost, destroyed or altered. If you find that this happened, *without a reasonable explanation*, you may, but are not required to, conclude that the lost, destroyed or altered evidence would be unfavorable to _____ (other party)." (emphasis added).

would have been relevant to a material issue in the case.

*Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 53, 127 N.M. 729, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181.  On the current record, Myers has failed to come forward with sufficient evidence to support giving the instruction. However, if he has additional evidence to support the instruction, Myers may present that evidence and renew his request at trial, when the Court has a better opportunity to consider the evidence and apply the factors outlined in *Torres*–whether the spoliation was intentional, whether Rogers acted with due diligence in preserving the information, and the relevance of the logbooks to the underlying negligence claim in the case.

### C. Whether Rogers Encouraged Its Drivers To Drive Without the Rest Required By Law

Defendants argue that they are entitled to summary judgment against Myers' claim that it encouraged its truck drivers to drive without the minimum hours of rest required by law.  Marie Slagle, Safety Director for Rogers, disputes this contention in her deposition testimony, asserting that Rogers pays its drivers the same regardless of when they arrive with the load and that it does not encourage them to speed or drive without proper rest.  In support of his claim, Myers relies on one fact alone: that Rogers pays its drivers a percentage of the value of each load they deliver.  His logic is that this creates an incentive for drivers to speed more and sleep less in an effort to deliver more loads.  The Court concludes that this single fact is insufficient as a matter of law to support summary judgment in favor of Myers on his claim that Rogers should be subject to punitive damages for encouraging its drivers to break the law. To permit this claim to go forward on that fact alone is tantamount to holding that it is inherently wrongful to compensate drivers by the load (or even by the mile, as that would create the same incentives).  Myers has come forward with no

authority supporting such an argument. Thus, Rogers is entitled to summary judgment on Myers' claim for punitive damages on this ground.

## II. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PUNITIVE DAMAGES [Doc. No. 61]

Defendants move for summary judgment on the grounds that there is no evidence to support Myers' claim for punitive damages. In order to survive a motion for summary judgment on this issue, Myers must come forward with evidence from which a jury could find that Gwinn and Rogers acted with a culpable mental state, or evil motive, that rose to a level of conduct that was willful, wanton, malicious, reckless, oppressive, or fraudulent. *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 27, 127 N.M. 729, 987 P.2d 386, *overruled on other grounds*, *Herrera v. Quality Pontiac*, 2003-NMSC-018,134 N.M. 43; *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 269, 881 P.2d 11, 14 (1994); *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 210, 880 P.2d 300, 307 (1994). "A mental state sufficient to support an award of punitive damages will exist when the defendant acts with 'reckless disregard' for the rights of the plaintiff—i.e., when the defendant knows of potential harm to the interests of the plaintiff but nonetheless 'utterly fail [s] to exercise care' to avoid the harm." *Id.* at 211, 880 P.2d at 308 (alteration in original). In reviewing the question whether evidence is sufficient to establish a culpable mental state, the Court must bear in mind that the limited purpose of punitive damages is "'punish[ing] a wrongdoer,' and deterring future tortious conduct." *Torres*, 1999-NMSC-029, ¶ 30, 127 N.M. 729, 987 P.2d 386 (alteration in original) (citation omitted); *Clay*, 118 N.M. at 269, 881 P.2d at 14; *Paiz*, 118 N.M. at 210, 880 P.2d at 307.

In this case, Myers has failed to come forward with any evidence to support an inference that either Rogers or Gwinn's actions were willful, wanton, malicious, reckless, oppressive, or

fraudulent. Myers points to testimony that Gwinn was speeding, driving too fast for the road conditions, and changed lanes toward the HELP truck. While this evidence supports a claim of negligence, it does not show the requisite mental state needed to impose punitive damages. The fact that Rogers apparently set the governor on Gwinn's truck at 78 miles per hour also does not support the claim, because on many interstate highways around the country the speed limit is 75 miles per hour, and the additional three miles per hour simply does not support a willful, wanton, malicious or reckless state of mind. The fact that Rogers destroyed Gwinn's log does not support a punitive damages claim because, as previously discussed, Rogers kept the log for six months more than required by federal regulations and because the underlying information was preserved to some degree by the computer generated "report card" and by eyewitness testimony. There is simply no evidence (only Myers' speculation) that the log would have shown that Gwinn had driven more than permitted by law or that he was otherwise impaired due to fatigue. The fact that Rogers did not drug test Gwinn after the accident, to the extent that such evidence is admissible (see below) also does not support an award of punitive damages absent a showing that there was either a legal requirement to test him or some other indication, such as a report of impairment, that would reasonably require such testing.

Finally, Myers argues that he is entitled to punitive damages because Gwinn had eight or nine speeding tickets in the years since he began driving at age sixteen. Counsel for defendant suggests that those tickets all occurred in Gwinn's personal vehicle, though there is no evidence in the record to that effect. The record also contains no evidence regarding the period of time that has elapsed since Gwinn was sixteen, the severity of any of Gwinn's speeding violations, or the length of time between those citations and the accident in this case. In short, the evidence regarding Gwinn's driving record is sketchy at best. Myers also points to the memo that Rogers sent to its

11

drivers stating, "It is strongly suggested that your log book shows 5 mph below the posted speed limit in each state."[4] Myers contends that in this memo, Rogers is implicitly encouraging its drivers to falsify their logs to record speeds below which they actually traveled. Myers contends that by hiring Gwinn despite his history of speeding tickets, in combination with the memo allegedly encouraging its drivers to falsify log books, Rogers is liable for punitive damages. However, the Court disagrees. Viewed in the light most favorable to Meyers, this evidence simply does not rise to the level of the required mental state.

Indeed, there is evidence from which a jury could conclude that Gwinn drove negligently and caused the accident. However, the record contains no evidence upon which a punitive damages award could rest. Therefore, Defendants are entitled to summary judgment on this claim.

## III.     DEFENDANTS' MOTIONS IN LIMINE

### A.     Gwinn's Prior Traffic Citations and Accidents

Defendants have moved to exclude at trial evidence of Gwinn's prior traffic citations and evidence of two accidents involving Gwinn. In addition to the vague evidence of Gwinn's speeding tickets described above, the record contains equally vague evidence that on one occasion, Gwinn's commercial vehicle was "rear-ended" by another car, and on a second occasion he was a passenger in a dump truck which tipped onto its side. Defendants argue that none of the foregoing evidence of speeding tickets or accidents is relevant to the question of whether Gwinn was negligent on the day of the accident, and that even if it is relevant, it is more unfairly prejudicial than probative. The Court agrees. Myers has failed to demonstrate how this evidence relevant to the accident in this case. Furthermore, although he suggests that the evidence is admissible under Rule 404(b), he fails

---

[4] It is far from clear that the memo actually encourages the drivers to falsify their logs. However, for purposes of this motion, the Court assumes that it does.

to explain why that is the case. He has not shown that any of these incidents were similar to the accident in this case, or how the evidence demonstrates motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake as required by Rule 404(b). The motion in limine will be granted.

> **B.** **Absence of Post-Accident Drug Testing**

Defendants move the Court for an order in limine excluding evidence of Rogers' failure to conduct a drug test on Gwinn after the accident. Defendants argue that Rogers did not conduct a drug test because the Department of Transportation regulations did not require it, and therefore the evidence is irrelevant. They also argue that the evidence is unfairly prejudicial and would mislead or confuse the jury.

Defendants contend that when, as here, an accident results in bodily injury with immediate treatment away from the scene, the Department of Transportation regulations require drug testing of a commercial motor vehicle driver who received a citation. On the other hand, the regulations do not require testing under those circumstances if the driver was not cited. 49 C.F.R. § 382.303. Myers does not disagree that this is what the regulations require nor does he present any countervailing arguments. It is also undisputed that Gwinn did not receive a citation as a result of the accident in this case and therefore Rogers had no legal obligation to test him. Thus, Defendants contend that the evidence of Rogers' failure to test Gwinn is irrelevant, and that it would confuse and inflame the passions of the jury. Myers has again failed to explain how the evidence is relevant, and why it does not result in unfair prejudice. The record contains no evidence to support an inference that Gwinn was impaired by drugs at the time of the accident. For example, Officer Kramer spoke with Gwinn after the accident and noted no possible impairment on his report. Given the fact that the applicable regulations did not require that he be tested, Rogers' failure to test Gwinn

is irrelevant. This motion in limine will be granted as well.

**IT IS THEREFORE ORDERED** that:

(1) *Defendants' Motion for Summary Judgment Regarding Plaintiff's First Amended Complaint* [Doc. No. 69], is **GRANTED**;

(2) *Defendants' Motion for Partial Summary Judgment Regarding Punitive Damages* [Doc. No. 61], Defendants' *Motion in Limine to Exclude Testimony and Evidence Concerning Post-Accident Testing* [Doc. No. 58], and *Defendants' Motion in Limine to Exclude Evidence and Testimony Regarding Defendant Gwinn's Prior Traffic Citations and Accidents* [Doc. No. 60] are **GRANTED**.

                                                                                    _____
**UNITED STATES DISTRICT JUDGE**